# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| LATTANNISHA ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 9:13-cv-3394-DCN |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| CHRISTOPHER D. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 9:13-cv-3395-DCN |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

This matter is before the court on identical motions to dismiss for lack of subject matter jurisdiction filed by the government.[1] For the reasons set forth below, the court grants in part and denies in part the government's motion.

## I. BACKGROUND

On February 24, 2012, Kalvin Hunt ("Hunt"), a Marine on involuntary leave while appealing his dishonorable discharge, was accompanied to the Beaufort Naval Hospital ("the naval hospital") by Edward Ray ("Ray"), an employee of the Beaufort

---

[1] The government also moved to dismiss for failure to state a claim in the same motions. That portion of the government's motions is addressed in the conclusion of this order.

1

County Office of Veteran's Affairs.[2] When Hunt and Ray arrived at the naval hospital, Nurse Saundra Smith ("Smith") came to offer assistance and meet with Hunt. While Smith was in the process of interviewing Hunt and scheduling an appointment for him to see a doctor the following Monday, Hunt began to rock back and forth in his chair and let out an exasperated kind of moan. When Smith asked Hunt if he wanted to hurt himself, he said that he did. At that time, Smith took Hunt and Ray to the emergency department.

Once in the emergency department, Hunt first saw triage nurse Janice McDonald ("Janice"). When Janice asked Hunt whether he had thoughts about hurting himself, he responded that he did, although he had no plan to hurt himself at that time. Janice informed Hunt that he would be evaluated by a psychiatrist and, depending on her judgment, a decision would be made whether to admit him. Janice turned Hunt over to her husband Joe McDonald ("Joe"), who is also a registered nurse in the emergency department. Joe accompanied Hunt to be evaluated by Dr. Christian Jansen ("Dr. Jansen"). Dr. Jansen noted that Hunt had suicidal thoughts and thoughts of hurting others, but no specific plans. At that time, Dr. Jansen called for a psychiatric technician from the naval hospital's mental health unit to evaluate Hunt.

Arthur Manning ("Manning"), a psychiatric technician, evaluated Hunt and recommended that Hunt be admitted. The on-duty psychiatrist, Dr. Beverly Hendelman ("Dr. Hendelman"), accepted the recommendation and made the decision to hospitalize Hunt. Dr. Hendelman then relayed her decision to Dr. Jansen. The plan was to admit Hunt to nearby Beaufort Memorial Hospital because the naval hospital did not provide in-patient mental health treatment.

---

[2] Ray is now deceased.

About the time that Dr. Jansen was in the process of determining bed availability at Beaufort Memorial, Ray asked Joe if he and Hunt could go outside for some fresh air, and Joe said that they could.  Once outside, Hunt removed some items of clothing and ran towards the front gate.  A security guard saw Hunt running but did not stop him.  Ray attempted to pursue Hunt, but was unable to catch him.  Ray approached the front gate and described the events that had just occurred to a group of security guards.  A security guard called the Beaufort County Sheriff's Department to report the incident.

At the same time, the Town of Port Royal Fire Department was responding to an emergency call at a nearby apartment complex.  Hunt got into the still-running and unattended fire truck and began driving it down Ribaut Road at high speed.  Hunt collided with many cars, including one driven by plaintiff Lattannisha Roberts ("Roberts").  Hunt also struck and killed pedestrian Justin Miller, whose brother, plaintiff Christopher Miller ("Miller"), was nearby.

On December 4, 2013, Miller and Roberts filed the present actions, alleging causes of action against the government for negligence and negligent undertaking of duty.[3]  On November 14, 2015, the government filed a motion to dismiss in both cases.  Miller and Roberts each responded on December 19, 2014, and the government filed a reply on May 22, 2015.  These motions have been fully briefed and are ripe for the court's review.

---

[3] Plaintiffs' complaints name the United States Naval Hospital as a defendant. Plaintiffs agree that the United States should be substituted for the United States Naval Hospital.  Roberts's Resp. 6 n.1; Miller's Resp. 6 n.1; see See Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms, 807 F. Supp. 2d 362, 369 (D. Md. 2011); 28 U.S.C. § 2679.  Therefore, the court substitutes the United States as the defendant for all causes of action asserted against the United States Naval Hospital.

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for "lack of subject-matter jurisdiction."  The determination of subject matter jurisdiction must be made at the outset before any determination on the merits.  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83 (1998).  "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)."  <u>Williams v. United States</u>, 50 F.3d 299, 304 (4th Cir. 1995).  If the plaintiff cannot overcome this burden, the claim must be dismissed.  <u>Welch v. United States</u>, 409 F.3d 646, 651 (4th Cir. 2005).  In ruling on a Rule 12(b)(1) motion, "the court may consider exhibits outside the pleadings" and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  <u>Williams</u>, 50 F.3d at 304 (internal citations and quotations omitted).

## III.  DISCUSSION

The government moves to dismiss plaintiffs' claims against it for lack of subject matter jurisdiction pursuant Rule 12(b)(1).[4]  The government contends that the plaintiffs' claims are barred by the doctrine of sovereign immunity.  Gov't's Mot. 8.

It is well settled that the United States, as a sovereign, is immune from suit except to the extent that it has consented to be sued.  <u>Frahm v. United States</u>, 492 F.3d 258, 262 (4th Cir. 2007) (citing <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941)).  Absent a waiver, sovereign immunity shields the federal government and its agencies from suit.

---

[4] In both cases, the government filed an answer shortly after the cases were filed and did not file the present motions until sometime later.  Rule 12(b) provides that motions filed pursuant to that subsection "must be made before pleading if a responsive pleading is allowed."  Therefore, the government's motions are untimely as filed.  Nonetheless, the court will consider the government's motions under Federal Rule of Civil Procedure 12(h)(3), which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

FDIC v. Myer, 510 U.S. 471, 475 (1994).  Sovereign immunity is jurisdictional in nature and the terms of the government's consent to be sued in any court define that court's jurisdiction to entertain suit.  Meyer, 510 U.S. at 475.

A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed."  United States v. King, 395 U.S. 1, 4 (1969).  Waivers must be construed strictly in favor of the sovereign and may not be enlarged beyond what the statutory language requires.  Ruckelshaus v. Sierra Club, 463 U.S. 680, 685–86 (1983).  "[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists."  Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005)

> The Federal Tort Claims Act ("FTCA") provides that district courts
>
> have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  The FTCA, therefore, provides for a limited waiver of the United States' sovereign immunity, but this waiver restricts liability to acts or omissions of agents or employees of the United States.  "Congress has not waived the sovereign immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government."  Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996).

The government contends that the court lacks subject matter jurisdiction over these actions because:  (1) the alleged negligent acts were not performed by employees of the United States within the meaning of the FTCA; and (2) the FTCA does not waive

sovereign immunity based on the exercise of a discretionary function. The court will consider each of these arguments in turn.

### A. Employees of the United States

The government first argues that Dr. Jansen, Joe, and Janice—all of whom worked in the emergency department at the hospital during the incident in question—are not federal employees within the meaning of the FTCA. Gov't's Mot. 11.

Whether a person is a contractor or an employee for purposes of the FTCA is determined under federal law. Logue v. United States, 412 U.S. 521, 528 (1973). Title 10 U.S.C. § 1091 provides that "[t]he Secretary of Defense, with respect to medical treatment facilities of the Department of Defense . . . may enter into personal services contracts to carry out health care responsibilities in such facilities, as determined to be necessary by the Secretary." The United States, through the Navy Medical Logistics Command, entered into a contract with CasePro, a Texas-based healthcare staffing company, to provide healthcare workers to the hospital's emergency department under personal services contracts. There is no dispute that Dr. Jansen, Joe, and Janice are healthcare workers serving under a personal services contract. Under Department of Defense regulations,

> The appearance of an employer-employee relationship created by the DoD supervision of a personal services contractor will normally support a limited recognition of the contractor as equal in status to a DoD employee in disposing of personal injury claims arising out of the contractor's performance. <u>Personal injury claims alleging negligence by the contractor within the scope of his or her contract performance, therefore, will be processed as claims alleging negligence by DoD military or civil service personnel.</u>

32 C.F.R. § 107.5(b) (emphasis added).

The parties seemingly agree up to this point. The parties disagree, however, about the application of the Gonzalez Act. "The Gonzalez Act provides that in suits against military medical personnel for torts committed within the scope of their employment, the Government is to be substituted as the defendant and the suit is to proceed against the Government under the FTCA." United States v. Smith, 499 U.S. 160, 162–63 (1990).

The Gonzalez Act specifically provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (including medical and dental technicians, nursing assistants, and therapists) of the armed forces [or] the Department of Defense . . . in the performance of medical, dental, or related health care functions . . . while acting within the scope of his duties or employment therein or therefor shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel . . . whose act or omission gave rise to such action or proceeding. <u>This subsection shall also apply if the physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel (or the estate of such person) involved is serving under a personal services contract entered into under section 1091 of this title</u>.

10 U.S.C. § 1089(a) (emphasis added).

The government contends that §1089 "operates as the limited waiver of sovereign immunity allowing an FTCA claim to be brought against a personal services healthcare worker for medical malpractice." Gov't's Mot. 13–14. Therefore, the government argues, § 1089 is "the exclusive remedy against the United States for conduct by healthcare workers under a personal services contract." Gov't's Reply 2. The government essentially claims that because §1089 is titled "Defense of certain suits arising out of medical malpractice," the only cause of action the government can be sued

7

for with regard to the negligent actions of healthcare workers serving under personal service contracts is medical malpractice.

The government fundamentally misunderstands the Gonzalez Act. The Gonzalez Act is neither a waiver of sovereign immunity nor a remedy. Rather, it provides that the remedy and waiver of sovereign immunity contained in the FTCA is the exclusive remedy for damages due to personal injury caused by a negligent act of any military healthcare provider and that individual healthcare providers themselves may not be sued for such conduct. The Gonzalez Act, therefore, does not provide a remedy to an injured party nor does it limit any remedy an injured party may have against the government under the FTCA, but rather limits remedies against individual healthcare providers.[5] A recent Supreme Court decision confirms this interpretation of the Gonzalez Act:

> Originally, the FTCA afforded tort victims a remedy against the United States, but did not preclude lawsuits against individual tortfeasors. . . . In time, Congress enacted a series of agency-specific statutes designed to shield precisely drawn classes of employees from the threat of personal liability. One such measure was the . . . the Gonzalez Act. That Act, controlling in this case, makes claims against the United States under the FTCA the "exclusive" remedy for injuries resulting from malpractice committed by medical personnel of the armed forces and other specified agencies.

Levin v. United States, --- U.S. ----, 133 S. Ct. 1224, 1228–29 (2013) (internal citations omitted).

In a similar case, a district court in North Carolina analyzed the Gonzalez Act and 32 C.F.R. § 107.5(b) and determined that "pursuant to the Gonzalez Act, health care providers who serve under a personal services contract authorized by the U.S. Secretary

---

[5] The fact that § 1089 does not provide a remedy makes it somewhat curious that plaintiffs go out of their way to assert that their claims are "not brought pursuant to 10 USC § 1089 and do[] not allege acts of medical negligence." Roberts Compl. ¶¶ 40, 52; Miller Compl. ¶¶ 40, 52. Nonetheless, the court does not find plaintiffs' pleadings relevant to its jurisdictional analysis.

of Defense are deemed to be employees of the government for the purpose of disposing of personal injury claims." Glenn, Sr. v. Performance Anesthesia, P.A., 2010 WL 3420538, at *5 (E.D.N.C. Aug. 27, 2010); see also Robb, 80 F.3d at 889 n.3 (holding that health care personnel "may be deemed employees of the government for FTCA purposes because they were hired pursuant to an act of Congress which designates them as such"). Glenn was appealed and the Fourth Circuit, in an unpublished decision, held that "[i]n enacting the [Gonzalez Act], Congress unambiguously placed the government's professional healthcare contractors on an equal footing with its similarly situated armed services personnel." Hancox v. Performance Anesthesia, P.A., 455 F. App'x 369, 372 (4th Cir. 2011).

The court briefly notes an issue arising out of the Gonzalez Act's heading referring to "medical malpractice" and, as discussed above, plaintiffs' assertion that their claims do not allege medical negligence. While the title of § 1089 mentions medical malpractice, nothing in the text of the section limits its application to medical malpractice cases. In fact, the plain language of § 1089 appears to apply directly to the cases here: "[T]he remedy against the United States provided by [the FTCA] for damages for personal injury, including death, caused by the negligent or wrongful act or omission of [a healthcare provider] . . . shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such [healthcare provider, including one serving under a personal services contract]." 10 U.S.C. § 1089. Moreover, the Supreme Court has long held that "the heading of a section cannot limit the plain meaning of the text," and that headings "are of use only when they shed light on some ambiguous word or phrase." Bhd. of R.R. Trainmen v. Baltimore & O. R. Co., 331 U.S.

519, 528–29 (1947); see also Lawson v. FMR LLC, --- U.S. ----, 134 S. Ct. 1158, 1169 (2014) (noting that headings are "but a short-hand reference to the general subject matter of the provision, not meant to take the place of the detailed provisions of the text." (citation and internal quotation marks omitted)). Because the Gonzalez Act is not ambiguous, the court does not read the title to limit the application of the Act to claims for medical malpractice.[6]

Because "[t]he contract between the government and [CasePro] in this case meets the statutory requirements [of § 1091] . . . , [Dr. Jansen, Joe, and Janice] are, in effect, employees 'of the armed forces' for liability purposes." Hancox, 455 F. App'x at 372. Therefore, the court denies the government's motion to dismiss to the extent it asserts that the trio are not government employees within the meaning of the FTCA.

### B.     Discretionary Function Exception

The government also argues that the court lacks subject matter jurisdiction over some of plaintiffs' claims because of the discretionary function exception to sovereign immunity. Gov't's Mot. 15–16. The government only advances this argument with respect to "claims relating to Hunt leaving the Base without inquiry and that the sentries

---

[6] Even if the Gonzalez Act only applied to medical malpractice claims and was not applicable here, it would not follow that Dr. Jansen, Joe, and Janice are not federal employees. Rather, the court would need to analyze the control the government exerted over them to determine whether they are federal employees under the FTCA. See Williams v. United States, 50 F.3d 299, 306 (4th Cir. 1995) (holding that "the United States will not liable under the independent contractor exception of the FTCA by virtue of entering contracts and demanding compliance with federal standards, unless the United States actually supervises the 'day-to-day operations' of the endeavor" and finding that an important factor in that analysis is whether the government has the authority "to control the detailed physical performance of the contractor"). While this issue has not been directly briefed by the parties, the court notes that its prior order granting CasePro's motion to dismiss found that the government had essentially exclusive control over Dr. Jansen, Joe, and Janice pursuant to the government's contract with CasePro.

and security personnel failed to follow policies and procedures in place, and failed to implement adequate training, supervision, safety procedures and policies." Id. at 16.

Title 28 U.S.C. § 2680 sets forth exceptions to the FTCA's waiver of sovereign immunity.  One such exception provides that the FTCA does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a). The discretionary function exception is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  United States v. Varig Airlines, 467 U.S. 797, 814 (1984).  It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  Id. at 808.

Courts follow a two-step analysis to identify protected discretionary functions in FTCA actions.  First, the exception covers only acts that "involv[e] an element of judgment or choice."  United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)) (alteration in original).  "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive."  Id. (citation and internal citation marks omitted).  Even if the challenged conduct involves an element of judgment, it must also be determined "whether that judgment is of the kind that the discretionary function exception was designed to shield."  Id. at 322–23.  At this second

11

prong, the court must determine whether the governmental action was "based on considerations of public policy." Id. at 323. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325. Plaintiffs bear the burden of proving that the discretionary function exemption does not apply. LeRose v. United States, 285 F. App'x 93, 96 (4th Cir. 2008).

The government's motion is not the model of clarity when it comes to what actions they allege fall within the discretionary function exemption. To the extent plaintiffs allege that the government was negligent by failing to "implement adequate training, supervision, safety procedures and policies," Gov't's Mot. 16, the court agrees with the government that the decision to promulgate certain procedures falls within the discretionary function exemption because such a decision involves judgment and is susceptible to a policy analysis. See Zielinski v. United States, 89 F.3d 831, *3 (4th Cir. 1996) (table decision) (recognizing that "extent and manner of base security measures in general fell within the discretionary function exception" and finding that the decision to what extent a base should be open or closed is within the commander's discretion). However, plaintiffs' allegation that naval hospital employees failed to comply with existing policies and procedures does not fall within the discretionary function exemption. See Gaubert, 499 U.S. at 322 ("The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." (emphasis added)).

Therefore, the court grants the government's motion to dismiss to the extent plaintiffs allege that the government was negligent by failing to have sufficient policies in place at the naval hospital, but denies the motion to the extent plaintiffs allege that naval employees failed to comply with policies and procedures already in place.

## IV.  CONCLUSION

For the foregoing reasons, the court **GRANTS** the government's motions to dismiss for lack of subject matter jurisdiction in part and **DISMISSES** plaintiffs' claims to the extent they allege that the government was negligent by failing to have sufficient policies in place at the naval hospital.  The court **DENIES** the government's motions to dismiss for lack of subject matter jurisdiction in all other respects.

Additionally, the court **DENIES** the government's motions to dismiss for failure to state a claim without prejudice.  Because the parties discuss matters outside the pleadings, those motions are more properly considered as motions for summary judgment once discovery has been completed.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 28, 2015**
**Charleston, South Carolina**